UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Aracely Pacheco Moran,<br><br>   Plaintiff<br><br>v.<br><br>Alejandro Mayorkas, Secretary of Homeland Security; Tae Johnson, Director of the U.S. Immigration and Customs Enforcement; and Tracy Renaud, Acting Director of the U.S. Citizenship and Immigration Services,<br><br>   Defendants | Case No.: 2:20-cv-01316-JAD-EJY<br><br>**Order Granting in Part<br>Motion to Dismiss Claims**<br><br>[ECF No. 26] |

Although it is undisputed that plaintiff Aracely Pacheco Moran is a native of Guatemala and a Lawful Permanent Resident (LPR) of the United States, the Department of Homeland Security (DHS) initiated removal proceedings against Pacheco in July 2018, claiming that she had not been lawfully admitted or paroled into the United States.  The DHS eventually changed course and moved to dismiss the removal proceeding, and the immigration judge (IJ) granted the DHS's dismissal motion, which admitted that the U.S. Citizenship and Immigration Service (USCIS) had granted Pacheco LPR status.  The problem, it seems, was that the USCIS had multiple Alien Registration Numbers (A-numbers) that were associated with Pacheco but recognized that fact only when her attorney, armed with the product of a Freedom of Information Act (FOIA) request, moved to dismiss the removal proceeding.  Pacheco was detained without bail for four months while this process played out.

Pacheco sues the Secretary of Homeland Security Alejandro Mayorkas, Director of the U.S. Immigration and Customs Enforcement (ICE) Tae Johnson, and Acting Director of the

USCIS Tracy Renaud,[1] all in their official capacities, alleging that they violated the Administrative Procedure Act (APA)[2] and deprived her of due process and equal protection of rights guaranteed to her under the Fifth Amendment to the U.S. Constitution when they failed to maintain accurate records about her immigration status.[3] She seeks injunctive and declaratory relief to correct the errors in the USCIS's and FBI's records about her, declare her correct immigration status and A-number, and re-adjudicate her application to replace her Permanent Resident card (Green Card).[4]

The defendants move to dismiss Pacheco's claims, arguing that (1) the United States of America has not waived sovereign immunity under four of the five statutes that Pacheco relies on for subject-matter jurisdiction, (2) Pacheco has not alleged a final agency action necessary to obtain judicial review under the APA, (3) Pacheco didn't exhaust her administrative remedies for her claims, and (4) the amended complaint fails to state a claim upon which relief can be granted. Pacheco addresses most of these arguments in her response. After reviewing the parties' counseled briefs, the administrative record that Pacheco provides, and the applicable authorities, I conclude that the only colorable claim for relief that Pacheco asserts is her claim under the APA contending that the USCIS wrongly denied her application for a replacement Green Card on nondiscretionary grounds. So I grant the defendants' dismissal motion in part, and because

---

[1] On February 2, 2021, Alejandro Mayorkas became the Secretary of Homeland Security, automatically substituting for Acting Secretary of Homeland Security Chad Wolf under Federal Civil Procedure Rule 25(d). On January 13, 2021, Tae Johnson became the Director of ICE, automatically substituting for Deputy Director and Senior Official Performing Duties of the Director Matthew T. Albence under Rule 25(d). On January 20, 2021, Tracy Renaud became the Acting Director of the USCIS, automatically substituting for Acting Director Kenneth T. Cuccinelli under Rule 25(d).

[2] 5 U.S.C. §§ 551–59.

[3] ECF No. 17 (amended complaint).

[4] *Id.* at 11–13.


Pacheco's current pleading is largely defective and difficult to comprehend, I give her leave to file a second amended complaint curing the defects identified in this order.

## Introduction[5]

Pacheco contends that she applied for political asylum with the USCIS's predecessor, the Immigration and Naturalization Service (INS), in August 1991 and was assigned A-number A071-572-***.[6] When Pacheco filed for parole in June 1996, she was assigned a slightly different A-number: A07**2**-572-***.[7] Pacheco wrote the INS in June 1997, informing it that she was applying for adjustment of status and to close her application for political asylum. The INS failed to close her asylum application.

According to Pacheco, in February 2000, the USCIS accorded her LPR status under the second A-number.[8] Pacheco speculates that, at some later date, a USCIS employee made a hand-written change to her Memorandum of Creation of Record of LPR form, replacing her A-number with an entirely different one: A071-504-***.[9] This is the third A-number that USCIS has associated with Pacheco in its system. Pacheco alleges that the third A-number isn't even hers alone but is also assigned to an "Araceli ('Maribel') Zamora of Florida."[10]

---

[5] Most of this factual recitation is taken from Pacheco's amended complaint. It is provided for context and should not be construed as findings of fact.

[6] ECF No. 17 at ¶ 19. Complicating matters is the fact that Pacheco's attorney uses several names throughout the pleading without explaining if they all refer to this plaintiff—Aracely Pacheco Moran. *Compare* ECF No. 17 at ¶¶ 19–22 (referring to "Aracely Pacheco"), *with id.* at ¶ 24 (discussing "Araceli Zamora Moran"; plaintiff alleges in ¶ 30 that "Martin Zamora" is "Aracely's spouse"), *and id.* at ¶ 25 (referring to "Araceli Pacheco"), *and also id.* at ¶ 36 (referring to "Aracely Zamora").

[7] *Id.* at ¶ 20.

[8] ECF No. 5-3 at 25 (Pacheco's Appendix of Exhibits, Vol. III).

[9] ECF No. 17 at ¶¶ 37–38.

[10] *Id.*

Pacheco alleges that sometime before December 22, 2004, the USCIS unilaterally changed her address (the one associated with the first A-number) to Lincoln, Nebraska.[11] Because it was still processing Pacheco's asylum application, the USCIS sent Fingerprint and Interview notices to the Nebraska address, which were returned as undeliverable because she did not live there.[12]  The USCIS held a hearing on Pacheco's asylum application in January 2004, which Pacheco wasn't aware of and didn't attend because the notices were sent to the wrong address.[13]  The USCIS ultimately found that Pacheco had abandoned her asylum application,[14] and a year later it changed her entry class to "entry without inspection."[15]

Unaware that any of this had happened, Pacheco applied for a replacement Green Card using the first A-number (071-572-***) in 2014.[16]  The USCIS denied her application in August 2015, stating that its "records do not show that you have lawful permanent status."[17]  Pacheco was arrested in July 2018, and ICE investigated her immigration status.  That same month, ICE sent fingerprints to the FBI, which responded that they belonged to Pacheco.[18]  ICE told the FBI to update Pacheco's file with an alien-present-without-admission-or-parole charge, which it did.[19]

---

[11] *Id.* at ¶ 24.  This appears to be a typo, as the documents that Pacheco provides state that the address is in Lexington, not Lincoln, as Pacheco alleges.  *See, e.g.*, ECF No. 502 at 118.
[12] ECF No. 17 at ¶ 26.
[13] *Id.* at ¶¶ 22, 25, 27.
[14] *Id.* at ¶ 27.
[15] *Id.* at ¶ 29.
[16] *Id.* at ¶ 47.
[17] *Id.* at ¶ 48.
[18] *Id.* at ¶ 40.
[19] *Id.* at ¶¶ 41–44.

Pacheco explains in her response to the defendants' dismissal motion that the DHS initiated removal proceedings against her in July 2018.[20]  She moved the IJ to dismiss the proceeding and order the USCIS to waive the fees associated with her applications for a replacement Green Card and to be naturalized.  The DHS also moved to dismiss the removal proceeding, admitting there had been an error but placing the blame on Pacheco providing the wrong registration number when she applied for LPR status.[21]  The DHS explained to the IJ that because the A-number Pacheco supplied had been assigned to another person, the USCIS assigned her another A-number (A071-504-***), but the agency failed to associate the new A-number with Pacheco's "original registration number A071-572-***."[22]  The DHS concluded that "because [Pacheco] is a Lawful Permanent Resident[,] the instant Notice to Appear was improvidently issued."[23]

The IJ granted the DHS's dismissal motion,[24] but it doesn't appear that the IJ ruled on the fee-waiver requested in Pacheco's dismissal motion.  Before she received the IJ's decision granting the DHS's dismissal motion, Pacheco renewed her request for a fee waiver and moved for a declaration about what her correct A-number is, but it doesn't appear that the IJ ruled on Pacheco's renewed motion either.[25]

---

[20] ECF No. 28 at 3, ¶ 15 (Pacheco's response to the defendants' dismissal motion).  Pacheco actually alleges that DHS started its removal case against her in July 2017, but I assume that's a typo based on her other allegations.
[21] ECF No. 28-1 at 25.
[22] *Id.* at 27.
[23] *Id.*
[24] *Id.* at 31.
[25] *Id.* at 33–35.

**Discussion**

**I.      Standards of review**

Motions to dismiss under Federal Civil Procedure Rule 12(b)(1) for lack of subject-matter jurisdiction "may be facial or factual."[26] "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."[27] But "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."[28] Here, the defendants lodge a facial attack against Pacheco's jurisdictional allegations. "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."[29]

When evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss, mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[30] The court must consider whether the well-pled factual allegations state a plausible claim for relief.[31] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[32] A complaint that

---

[26] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).
[27] *Id.*
[28] *Id.*
[29] *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).
[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).
[31] *Id.* at 679.
[32] *Id.*

does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[33]

## II. Federal sovereign immunity

Pacheco identifies five statutes that she contends give this court jurisdiction to consider her claims—28 U.S.C. §§ 1331, 1346(a)(2), 2201, and 1361 and 5 U.S.C. § 702.[34] The defendants argue that the United States has not waived its sovereign immunity except under 5 U.S.C. § 702. Missing the point, Pacheco argues that the statutes that she invokes provide the court with jurisdiction over her various claims.[35] So she does not directly address whether a statutory waiver of sovereign immunity exists.

"The United States, as a sovereign, is immune from suit unless it has waived its immunity."[36] This means that "[a] court lacks subject matter jurisdiction over a claim against the United States if it has not consented to be sued on that claim."[37] This immunity extends to federal officials who are sued in their official capacities.[38] "A waiver of sovereign immunity by the United States must be expressed unequivocally."[39] Any "purported statutory waivers of sovereign immunity are not to be liberally construed."[40]

---

[33] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[34] ECF No. 17 at 2.
[35] ECF No. 28 at 8–10.
[36] *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (citing *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999)).
[37] *Id.*
[38] *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985).
[39] *Consejo de Desarrollo*, 482 F.3d at 1173.
[40] *Id.*

To resolve the defendants' contention that dismissal is warranted under Rule 12(b)(1), I must examine Pacheco's proffered statutes to determine if any constitutes a waiver of the United States' sovereign immunity. The defendants point out—without dispute from Pacheco—that 28 U.S.C. § 1346(a)(2) does not apply here because that statute governs claims against the United States for damages not exceeding $10,000, and Pacheco does not seek monetary damages; she seeks only declaratory and injunctive relief.[41] As for 28 U.S.C. § 1331, which confers original jurisdiction to the district courts of "all civil actions arising under the Constitution, laws, or treaties of the United States[,]" the Ninth Circuit has instructed that statute "cannot by itself be construed as constituting a waiver of the government's defense of sovereign immunity."[42] The same is generally true of 28 U.S.C. § 1361,[43] which confers original jurisdiction to the district courts of "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." And the United States District Court for the District of Oregon persuasively explained after lengthy analysis in *Burns Ranches, Inc. v. U.S. Dep't of the Interior* that 28 U.S.C. § 2201, which creates the remedy of a declaratory judgment, is simply a procedural statute, "which means that it should not be considered a grant of jurisdiction and cuts sharply against treating it as a waiver of sovereign immunity."[44]

---

[41] ECF No. 26 at 4.

[42] *Gilbert*, 756 F.2d at 1458.

[43] *Hill v. United States*, 571 F.2d 1098, 1101 n.5 (9th Cir. 1978); *accord Pit River Home and Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1097–98 n.5 (9th Cir. 1994).

[44] *Burns Ranches, Inc. v. U.S. Dep't of the Interior*, 851 F. Supp. 2d 1267, 1271 (D. Or. 2011) (internal citation omitted) (collecting cases). But even if 28 U.S.C. § 2201 is a jurisdiction-granting statute, the *Burns* court aptly explained why it doesn't necessarily mean that it also constitutes a waiver of the United States' sovereign immunity. *Id.* at 1272 (quoting *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 924 (9th Cir. 2009)).

The only statute that constitutes a waiver of the United States' sovereign immunity here is 5 U.S.C. § 702. That statute states that "[a]n action . . . seeking relief other than money damages and stating a claim that an agency . . . acted or failed to act in an official capacity or under color of legal authority shall not be dismissed . . . on the ground that it is against the United States or that the United States is an indispensable party."[45] Section 702 authorizes suits for "declaratory, injunctive[,] or mandamus relief against the" United States and its agencies.[46]

Pacheco has not demonstrated that the United States waived its sovereign immunity for her claims under the Fifth Amendment, so I dismiss her claims alleging due-process and equal-protection violations without leave to amend. But because Pacheco has shown that the United States is not immune to her claims under the APA, I proceed to the defendants' arguments that she (1) failed to identify a final agency action necessary to state a claim under that statutory scheme and (2) did not exhaust her administrative remedies.

## II.  Claims under the APA

### A.  An agency action is final under the APA if it satisfies two conditions.

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."[47] District courts are therefore empowered by the APA to review agency action, and they have federal-question jurisdiction over those claims under 28

---

[45] 5 U.S.C. § 702.

[46] *United States v. Mitchell*, 436 U.S. 206, 227 & n.32 (1983).

[47] 5 U.S.C. § 702.

U.S.C. § 1331.[48] "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in court are subject to judicial review" under the APA.[49]

Pacheco asserts that her claims fall under the latter category: final agency actions for which there is no adequate remedy in court.[50] "Two conditions must be satisfied for agency action to be final for purposes of the APA."[51] "First, the action must mark the 'consummation' of the agency's decision[-]making process—it must not be of a merely tentative or interlocutory nature."[52] "And second, the action must be one by which 'rights and obligations have been determined,' or for which 'legal consequences will flow.'"[53]

Pacheco bases her seven claims for relief on a series of acts and omissions that she contends are final agency actions for the APA's purposes: (1) the USCIS unilaterally and without notice changed the A-number on her Creation of Record of LPR form, (2) the USCIS used more than one A-number to identify her in its records, (3) the USCIS failed to close her asylum application and deemed it abandoned, (4) the USCIS changed her immigration status to "entry without inspection," (5) the USCIS unilaterally and without notice changed her address, (6) the USCIS denied her application for a replacement Green Card, and (7) the FBI published a criminal-record update about her in its database.[54] Defendants argue that dismissal is warranted because Pacheco's amended complaint does not assert or demonstrate that a final agency action

---

[48] *Mamigonian v. Biggs*, 710 F.3d 936, 941–42 (9th Cir. 2013).
[49] 5 U.S.C. § 704.
[50] ECF No. 28 at 1–2, 10–11.
[51] *Mamigonian*, 710 F.3d at 942 (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).
[52] *Id.*
[53] *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).
[54] ECF No. 17 at 9–11. Pacheco alleges that each act or omission violates an unspecified provision of the APA and her Fifth Amendment due-process and equal-protection rights.

10

issued as to each claim.[55]  Pacheco responds that these agency actions are final because the removal proceeding against her "was terminated . . . without action on any of [her] seven claims for relief."[56]  I construe Pacheco's argument as an admission that each agency action does not itself satisfy the finality standard, but all are reviewable under the APA because the IJ's dismissal order satisfies the finality standard, and the APA provides that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."[57]

      The only hitch is that Pacheco doesn't clearly argue that the IJ's dismissal order satisfies the APA's finality standard.  I find that it does because there is no evidence that an appeal from the IJ's dismissal order is pending and there is no pending removal proceeding against Pacheco.  Thus, the IJ's dismissal order was the end of the agency's decision-making process and thus satisfies the first condition.  It is undisputed that the removal proceeding was dismissed on grounds that Pacheco had been accorded LPR status, and it is fair to say that the IJ's dismissal order determined Pacheco's rights to that benefit.  So the IJ's dismissal order also satisfies the second condition.

      But regardless of whether an agency action satisfies the APA's finality conditions, to state a valid claim for judicial review under that statutory scheme, Pacheco must allege true facts to show that she either "suffer[ed] legal wrong because of [that] agency action" or was "adversely affected or aggrieved by [that] agency action within the meaning of a relevant statute."[58]  Pacheco has not made this showing, and she cannot do so because the IJ's dismissal

---

[55] ECF No. 26 at 5.
[56] ECF No. 28 at 10.
[57] 5 U.S.C. § 704.
[58] 5 U.S.C. § 702.

order benefitted her, which explains why she doesn't state a claim alleging that the IJ's decision was wrong. So the IJ's dismissal order cannot serve as the final agency action needed to state a colorable claim for judicial review under the APA.

But the inability to use the IJ's dismissal order as the final-action hook does not end my analysis because Pacheco appears to argue that the USCIS's decision denying her application for a replacement Green Card is final for the APA's purposes. Citing 8 C.F.R. §§ 245.2, 264.5, she posits that the USCIS had nondiscretionary duties to (1) "maintain a record of approval of an application" and (2) approve her application for a replacement Green Card.[59] Pacheco supports her position by citing the Ninth Circuit's decision in *Mamigonian v. Biggs*.[60] The defendants argue that Pacheco's reliance on *Mamigonian* is misplaced.[61] I disagree but understand the defendants' frustration with Pacheco's reliance on *Mamigonian*. It's a complex opinion about a difficult area of law. And with only superficial analysis and block-quoted passages, Pacheco doesn't do much to show that it supports her argument that she has alleged a final agency action that's reviewable under the APA.

In *Mamigonian*, the USCIS denied Silva Mamigonian's first adjustment-of-status application on the alleged ground that she had made a false claim to citizenship.[62] During the subsequent removal proceeding, the IJ ordered Mamigonian removed for being present in the United States without a visa but, finding her testimony credible, the IJ dismissed the charges against Mamigonian for "falsely claiming citizenship and fraud or material misrepresentation to

---

[59] ECF No. 28 at 6, 10.
[60] *Id*. at 11 (quoting *Mamigonian*, 710 F.3d 936).
[61] ECF No. 32 at 6.
[62] *Mamigonian*, 710 F.3d at 939.

procure a benefit under Section 212(a)(6)(C)(i) of the Immigration and Nationality Act."[63] The IJ noted that the USCIS retains jurisdiction over the adjustment-of-status of an arriving alien like Mamigonian, so she applied to the USCIS for an adjustment of status a second time. The agency denied her second application on grounds that the IJ had ordered her removed. This prompted Mamigonian to file a third application, which the USCIS denied (in a media statement) on grounds that she was ineligible for that relief because she circumvented the "normal visa processing" and had a "preconceived intent to immigrate to the United States."[64] The USCIS also reopened and denied her second application that same day, and the agency reopened her second and third applications once more after that.[65]

Because the grounds that the USCIS gave when it first denied Mamigonian's second and third applications conflicted with the IJ's findings that she credibly did not falsely claim citizenship or make a material representation to procure an immigration benefit, Mamigonian filed a petition for writs of habeas corpus and mandamus and sought injunctive and declaratory relief against numerous government officials, seeking to enjoin her imminent removal, reverse the denial of her first adjustment-of-status application, and obtain approval of her then-pending second and third adjustment-of-status applications.[66] "The district court dismissed the case for lack of jurisdiction."[67] The Ninth Circuit affirmed, finding that because the USCIS had not ruled on Mamigonian's reopened second and third applications by the time that she filed her lawsuit,

---

[63] *Id.*
[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] *Id.*

there was no final agency action when she filed her complaint.⁶⁸ But the Ninth Circuit concluded that because the USCIS had denied those applications after she filed suit, "barring the discovery of new facts, the [d]istrict [c]ourt [had] jurisdiction to hear Ms. Mamigonian's claim that [the] USCIS improperly denied her adjustment-of-status application on nondiscretionary grounds."⁶⁹

The *Mamigonian* court also explained that the Ninth Circuit's prior statement about finality remains good law: "for purposes of the APA, '[w]ithout a pending removal proceeding, a denial of status adjustment is final because there is no appeal to a superior administrative authority.'"⁷⁰ Specific to the facts before it, the Ninth Circuit explained that the USCIS's decisions denying Mamigonian's applications to adjust her status were final because, as "an arriving alien, and unlike admitted aliens and the petitioners in [other cases], she is precluded from submitting or renewing an application for adjustment of status before an IJ during removal proceedings."⁷¹ The court elaborated that because "the IJ would be without jurisdiction to adjudicate any claims relating to Ms. Mamigonian's adjustment of status, [the] USCIS's prior denial of her adjustment of status would likewise fall outside the scope of [any appellate court's] subsequent review of any removal order."⁷² It reasoned that "because review would be unavailable to Ms. Mamigonian even if her removal proceedings were reopened, there is no

---

⁶⁸ *Id.* at 941–42.

⁶⁹ *Id.* at 946.

⁷⁰ *Id.* at 945 (quoting *Cabaccang v. U.S. Citizenship & Immigration Servs.*, 627 F.3d 1313, 1317 (9th Cir. 2010)).

⁷¹ *Id.* (citing 8 C.F.R. § 1245.2(a)(1)(ii)).

⁷² *Id.*

14

question that [the] USCIS's denial of Ms. Mamigonian's adjustment-of-status applications is [a] final agency action" for purposes of the APA."[73]

Although Pacheco points out that there is no pending removal proceeding against her,[74] she does not allege that the USCIS denied her adjustment-of-status application like in *Mamigonian*. Nor does she clearly argue that the denial of her application for a replacement Green Card is equivalent to denying a status-adjustment application. She instead argues that the USCIS has a nondiscretionary duty to approve her application for a replacement Green Card, presumably because she had been accorded LPR status. The defendants don't dispute the merits of this point.[75] Pacheco cites 8 C.F.R. § 264.5 to support her argument,[76] which doesn't actually support this argument, but it does provide that "[i]f an application [for a replacement Permanent Resident Card] is denied, the applicant shall be notified of the reasons for denial. **No appeal shall lie from this decision.**"[77] This means that, like in *Mamigonian*, (1) the applicable regulation prohibits appealing the USCIS's denial of an application for a replacement Green Card "to a superior administrative authority"[78] and (2) there is no pending removal proceeding against Pacheco. And unlike in *Mamigonian*, there is no evidence that the USCIS's decision denying her application for a replacement Green Card has been reopened or that Pacheco has re-applied for that relief. I therefore find that the USCIS's decision denying Pacheco's application for a replacement Green Card is final for the APA's purposes.

---

[73] *Id.*

[74] *See, e.g.*, ECF No. 28 at 10.

[75] *See* ECF No. 32 at 6 (arguing merely that Pacheco does not "meaningfully discuss how" the regulations that she cites support her argument).

[76] ECF No. 28 at 6, 10.

[77] 8 C.F.R. § 264.5(f) (emphasis added).

[78] *Mamigonian*, 710 F.3d at 945.

15

### B. Exhaustion of administrative remedies

What remains to be resolved for this claim is the defendants' argument that Pacheco has not exhausted her administrative remedies.[79] The U.S. Supreme Court instructed in *Darby v. Cisneros* that "where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review."[80] Here, the regulation governing applications for replacement Green Cards instructs that if the USCIS denies an application, "[n]o appeal shall lie from th[e] decision."[81] Because there is no "superior agency authority" to which Pacheco can appeal the denial of her application, she has not failed to exhaust her administrative remedies.

The upshot of my determinations about Pacheco's claims for relief under the APA is that she has asserted only one colorable claim for relief under that statutory scheme: her sixth claim alleging that the USCIS wrongly denied her application for a replacement Green Card on nondiscretionary grounds. The other agency actions that Pacheco alleges can be considered under the umbrella of her Green Card application-denial claim because they constitute "preliminary, procedural, or intermediate agency action[s]" that are "subject to review on the review of the final agency action"[82] do not constitute colorable claims under any legal theory in their own right. Rather, they are facts that Pacheco may plead to support her claim under the APA that the USCIS wrongly denied her application for a replacement Green Card. I therefore dismiss all of Pacheco's claims under the APA without leave to amend except for the one about

---

[79] ECF No. 26 at 5.

[80] *Darby v. Cisneros*, 509 U.S. 137, 154 (1993) (emphasis in original).

[81] 8 C.F.R. § 264.5(f).

[82] 5 U.S.C. § 704.

the denial of her replacement Green Card. I grant Pacheco leave to amend that claim consistent with this order.

## II. Claim for gross negligence

Pacheco appears to tack a claim for "gross negligence" onto her seventh claim for relief, which also alleges violations of the APA and Fifth Amendment due-process and equal-protection guarantees, by simply stating that the defendants' alleged conduct "constitutes gross negligence."[83] Because the few conclusions that Pacheco offers are not sufficient to state a colorable claim for negligence,[84] the defendants move to dismiss it under Rule 12(b)(6).[85] They also point out that the Federal Tort Claims Act (FTCA), which governs claims against the federal government for damages resulting from the negligence of a government employee, requires a plaintiff to exhaust her administrative remedies before filing suit.[86] They argue that Pacheco has not alleged how she exhausted the remedies available to her. Pacheco does not respond to either argument.[87] I construe Pacheco's silence as her concession that the defendants are right,[88] and I dismiss her gross negligence claim without leave to amend.

---

[83] ECF No. 17 at ¶ 90.

[84] *Iqbal*, 556 U.S. at 678–79 (explaining that a claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct); *accord Twombly*, 550 U.S. at 570.

[85] ECF No. 26 at 7.

[86] *Id.* at 5 (citing *D.L. by and through Junio v. Vassilev*, 858 F.3d 1242, 1244 (9th Cir. 2009)).

[87] *See generally* ECF No. 28.

[88] *See* Loc. R. 7-2(d) (with exceptions not relevant here, the failure to file points and authorities in response to any motion "constitutes a consent to the granting of the motion").

**Conclusion**

IT IS THEREFORE ORDERED that the defendants' motion to dismiss Pacheco's claims for relief **[ECF No. 26] is GRANTED IN PART**. All of Pacheco's claims are dismissed without leave to amend except her sixth claim for relief alleging that the USCIS wrongly denied her application for a replacement Green Card on nondiscretionary grounds (the Green-Card claim). I grant Pacheco leave to amend that Green-Card claim, and I require her to do so because her current pleading is largely deficient and difficult to follow. **Pacheco thus has until September 29, 2021, to file a second amended complaint** that contains only her Green-Card claim and cures the defects outlined in this order. If she fails to do so, this case will be dismissed and closed without further prior notice.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: September 7, 2021